Grimes v. Goodell.

---

W. C. GRIMES, Appellant, *vs.* WALLACE GOODELL, Respondent.

Under the Revenue Act of this State, *held,* that the Auditor, Assessor and Tax Collector are preferred creditors, and entitled to their pay for assessing and collecting the taxes, before the money collected is distributed among the several funds to which it properly belongs.

Appeal from the District Court of the Fifth Judicial District, Hon. S. L. Baker, presiding.

The facts appear in the opinion of the Court.

*Williams & Bixler*, for Appellant.

*Robert M. Clarke*, for Respondent.

Opinion by BEATTY, C. J., BROSNAN, J., concurring.

This was an application for a mandamus. Grimes was formerly Auditor of Churchill County, and claimed that his fees and salary as such Auditor should be paid out of the money collected for taxes in his county, in preference to warrants drawn on the General Fund of the county, which were of older date. The Treasurer refused so to pay, and Grimes applied to the District Court for a mandamus. That application was denied, and he appeals to this Court. Section 86 of the Revenue Act of 1864–5, amended in 1866, provides that the Auditor shall receive certain compensation, to be allowed by the Board of County Commissioners for folio work, and also a fixed monthly salary. Section 87 provides that the amount paid the Auditor for services under this Act shall be apportioned between the State and County in proportion to the tax assessed by each.

It seems, from this section, to have been the intention of the Legislature to apportion the payment, both of the folio work and the monthly salary, between the county and the State. Sections 77 and 78 of the Revenue Act read as follows:

77. " Each County Treasurer shall at the same time of making a settlement produce to the Controller of State the certified statement of the County Auditor of the amount allowed and paid to the Assessor and the County Auditor for the assessing and collecting of State revenue as prescribed by this Act; and no County Treasurer shall be allowed to make any settlement with the Controller of State, or in any manner release him or his bondsmen from liability for the full amount by him received, unless he produces to the Controller the statements required by this section."

78. " Whenever any allowance is made to any Assessor or Auditor as in this Act provided, the Clerk of the Board of County Commissioners shall certify the account so allowed to the Auditor, who

shall draw his warrant on the County Treasurer for that part of the same which the county is required to pay, which shall be in proportion to the taxes levied for State and county purposes respectively ; and the Auditor shall make a certified copy of the account, and indorse on the accounts remaining in his office the same; and shall furnish such copy with the indorsement thereon to the County Treasurer, who shall pay out of the moneys belonging to the State and county respectively the amounts indorsed on such accounts, to the Assessor and Auditor, and take his receipt therefor thereon. And the Treasurer on making his semi-annual statement shall present with the Auditor's statement such copy of the account allowed by the Board to the Assessor and Auditor, indorsed and receipted as herein provided, and the Auditor shall allow him for the amounts so paid."

The language of Section 78 shows clearly that the County Treasurer is to pay the State's portion of the Auditor's compensation before it goes out of his hands.   It also seems to contemplate that both the State's portion and that payable by the county shall be paid at the same time.

The last sentence in Section 78 shows, too, that the County Treasurer, at each semi-annual settlement, is to produce the receipt of the Auditor for his claim.   Now, if the Auditor was merely to receive a warrant on the Treasury, payable in due course according to its date, it is evident that the Treasurer could not or ought not to obtain his receipt for money not paid.   When a party obtains a warrant on the Treasury it might be very proper to give a receipt to the Auditor for the warrant.   But certainly no receipt should be given to the Treasurer before the payment of the money on the warrant.   It seems to have been the intention of the Legislature to pay the Auditor, Assessor and Tax Collector for their services in collecting the revenue before a distribution of the proceeds of the taxes into their respective funds in the State and county treasuries.   We are of the opinion the Treasurer should have paid the amount of the Auditor's claim before otherwise disposing of the county's share of the taxes collected.

From the rather imperfect record before us, it is not in our power to say what the Treasurer has done with the money out of which

the Auditor's claim should have been paid. Probably it has been paid into the General County Fund. If so, the Auditor should be paid out of that fund, and the Treasurer will then be entitled to the amount thus paid as a credit in the next semi-annual settlement.

The order of the Court below refusing the mandamus, is reversed. That Court will issue its mandamus in accordance with the opinion in this case.